1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

10   San Francisco Division

| | |
|---|---|
| 11    GABRIEL CLARK, et al. | Case No. 3:21-cv-09391-LB |
| 12    Plaintiffs, | **ORDER TO SHOW CAUSE** |
| 13    v. | |
| 14    JPMORGAN CHASE BANK, N.A., et al., | |
| 15    Defendants. | |

## INTRODUCTION

After the plaintiffs' counsel withdrew from the case due to a serious medical issue, the parties negotiated and then reached a settlement in principle. The defendant JP Morgan Chase gave a written settlement agreement to the plaintiffs for their signature in November 2022. They have not signed it and have not communicated with Chase since. Chase thus asks the court to issue an order to show cause to alert the plaintiffs that they risk dismissal of their case if they do not participate in the litigation. The court issues this order to notify the plaintiffs of the consequences that they face if they do not participate in their litigation. They may be subject to sanctions, including monetary sanctions and dismissal of their case if they fail to prosecute it.

## STATEMENT

On May 24, 2022, the court granted the plaintiffs' counsel's motion to withdraw, and their

United States District Court
Northern District of California

firm agreed to accept service until the plaintiffs secured counsel or appeared pro se.[1] In a joint status report on September 21, 2022, the plaintiffs said that they secured new counsel, James Haworth. At this point, Chase had worked with prior counsel and thought that the parties had reached, or were on the cusp of reaching, settlement terms. Mr. Haworth never appeared in the case or contacted Chase.[2] The plaintiff Gabriel Clark appeared at the September 29, 2022, case-management conference and gave a contact email of gdclark108@gmail.com.[3]

In a status report on October 27, 2022, Chase reported that they had settled the case in principle (attaching an email from the plaintiff Gabriel Clark reflecting that) and asked for sixty days to finalize the settlement.[4] In a status report on January 19, 2023, Chase asked for an additional thirty days to finalize the settlement. Chase had given a written settlement agreement to the plaintiffs on November 30, 2022, and — after Chase followed up with Mr. Clark on December 9, December 15, and December 27 — Mr. Clark responded on December 28 that he could not agree to the confidentiality term and responded several days later that he could not provide a W-9. On January 17, 2023, Mr. Clark wrote to Chase's counsel, explained that he had been affected by recent storms in Santa Cruz County, said that he needed time to finalize the matter, and asked to continue the matter.[5] In a status report on March 9, 2023, Chase filed a status report saying that the plaintiffs still had not signed the settlement agreement and Chase had sent six follow-up emails to the plaintiffs since the January 17 report. Chase thus asks for an order to show cause why the case should not be dismissed for lack of prosecution.[6]

The court will hold a hearing on March 23, 2023, at 9:30 a.m. by Zoom.

---

[1] Order – ECF No. 28. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Joint Status Report – ECF No. 34 at 2; *see generally* Docket.

[3] Minute Entry – ECF No.

[4] Status Report – ECF No. 37 at 2; Email, Ex. A to Status Report – ECF No. 37 at 4.

[5] Status Report – ECF No. 40 at 2.

[6] Status Report – ECF No. 42 at 2.

United States District Court
Northern District of California

United States District Court
Northern District of California

**ANALYSIS**

The court issues this order to set forth the standard for sanctions. It also orders the plaintiffs to respond to the status report by March 16, 2023, and to appear at the March 23, 2023, hearing by Zoom. If they do not, they risk sanctions, including monetary sanctions or, ultimately, dismissal of their case for failure to prosecute it.

### 1. Terminating sanctions

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." A dismissal order "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

"Rule 41(b) specifically provides that the failure of the plaintiff to prosecute his claim is grounds for involuntary dismissal of the action. The courts have read this rule to require prosecution with 'reasonable diligence' if a plaintiff is to avoid dismissal." *Anderson v. Air W., Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). "This court has consistently held that the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Id.* "The law presumes injury from unreasonable delay." *Id.* "However, this presumption of prejudice is a rebuttable one and if there is a showing that no actual prejudice occurred, that factor should be considered when determining whether the trial court exercised sound discretion." *Id.*

In *Yourish v. California Amplifier*, the Ninth Circuit applied the same five-factor standard considered in Federal Rule of Civil Procedure 37(b) cases in a Rule 41(b) case. 191 F.3d 983, 989–92 (9th Cir. 1999). "Under our precedents, in order for a court to dismiss a case as a sanction, the district court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Id.* at 990 (cleaned up). "We may affirm a dismissal where at least four factors support dismissal . . . or where at least three factors strongly support dismissal." *Id.* (cleaned up). "Although it is preferred, it is not required that the district court make explicit findings in order to show that it

United States District Court
Northern District of California

1   has considered these factors and we may review the record independently to determine if the district

2   court has abused its discretion." *Id.* (cleaned up). "The sub-parts of the fifth factor are whether the

3   court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant

4   party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of*

5   *Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).[7]

6       "A terminating sanction, whether default judgment against a defendant or dismissal of a

7   plaintiff's action, is very severe." *Id.*

8       A party suffers sufficient prejudice to warrant case-dispositive sanctions where the disobedient

9   party's actions "impair the defendant's ability to go to trial or threaten to interfere with the rightful

10   decision of the case." *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217,

11   1227 (9th Cir. 2006) (cleaned up).

12      Before ordering a terminating sanction, a court must warn the plaintiff and try other sanctions

13   first. For example, a district court's failure to warn a party that dismissal is being considered as a

14   sanction weighs heavily against the sanction. *U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr.*

15   *Co.*, 857 F.2d 600, 605 (9th Cir. 1988). Although "[a]n explicit warning is not always required, at

16   least in a case involving 'egregious circumstances,'" "[i]n other circumstances, the failure to warn

17   may place the district court's order in serious jeopardy." *Id.* Indeed, "[f]ailure to warn has

18   frequently been a contributing factor in [Ninth Circuit] decisions to reverse orders of dismissal."

19   *Id.* (cleaned up).

20

21

22

23   [7] "This 'test,'" the Ninth Circuit has explained, "is not mechanical." "It provides the district court

24   with a way to think about what to do, not a set of conditions precedent for sanctions or a script that
     the district court must follow:

25       Like most elaborate multifactor tests, our test has not been what it appears to be, a
         mechanical means of determining what discovery sanction is just. The list of factors

26       amounts to a way for a district judge to think about what to do, not a series of
         conditions precedent before the judge can do anything, and not a script for making

27       what the district judge does appeal-proof.

28   *Conn. Gen.*, 482 F.3d at 1096.

United States District Court
Northern District of California

### 2.  Monetary sanctions: Federal Rules of Civil Procedure 37(d)(3) and (b)(2)(C)

Rules 37(d)(3) and (b)(2)(C) provide that courts must require the party failing to act, the attorney advising that party, or both, to pay to award the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. "Under Rule 37(b)(2), which has the same language as Rule 37(d), the burden of showing substantial justification and special circumstances is on the party being sanctioned." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

Federal courts use the lodestar method to determine a reasonable attorney's fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The burden of proving that claimed rates and number of hours worked are reasonable is on the party seeking the fee award. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). The court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### 3.  Order to Appear on March 23, 2023, and Warning to the Plaintiffs

The court vacates the March 16, 2023, case-management conference and orders the plaintiffs to respond to Chase's status report by March 16, 2023, and to appear via Zoom at the March 23, 2023, hearing at 9:30 a.m. The link is available at https://www.cand.uscourts.gov/judges/beeler-laurel-lb/. If they do not, they risk the court's imposition of sanctions, including a monetary sanction awardable to Chase for any costs it incurs because of the plaintiffs' failure to prosecute their case. Ultimately, if the plaintiffs do not participate in their litigation, they risk dismissal of their case for failure to prosecute, which will result in a judgment being entered in favor of the defendant.

Withdrawing counsel must serve a copy of this order on the plaintiffs by mail and by email and to file proof of service before the March 23 hearing. The court asks Chase to do the same. The

court will send a courtesy copy by email to gdclark108@gmail.com and will reflect that service on the docket.

**IT IS SO ORDERED.**

Dated: March 10, 2023

LAUREL BEELER
United States Magistrate Judge